# United States Fire Insurance Company, et al v. Smith, et al.

(Decided March 20, 1928.)

## Appeal from McCracken Circuit Court.

Insurance.—In action by lumber company on fire insurance policies for destruction of lumber yard by fire, evidence held not to show that before fire occurred insurance on lumber yard in question had been eliminated by a revision of the insurance, but conclusively to establish that minds of parties never met on attempted revision, and hence that contracts as originally written were still in force, authorizing directed verdict for plaintiff.

FRANK M. DRAKE and BRADSHAW & McDONALD for appellants.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

In June, 1925, the Bondurant Lumber Company was
engaged in an extensive timber and lumber business at
Bondurant, Ky. It carried insurance on its mills, fac-
tories, machinery, buildings, lumber, and other personal
property, insured under general form policies, to the
total amount of $70,800. Boone, Foreman & Lackey, of
Paducah, Ky., were general insurance agents represent-
ing a great many old-line fire insurance companies. $39,-
000 of the $70,800 insurance carried under the general
schedule policies was written by Boone, Foreman &
Lackey. This general form insurance to the total
amount of $70,800 was distributed as follows: $5,000 on
frame sawmill building; $20,000 on the machinery while
contained therein; $300 on frame office building and
dwelling; $2,500 on frame building known as "general
store"; $500 on store and office furniture, fixtures, and
supplies (excluding stock) while contained therein; $2,-
500 on stock of general merchandise while contained
therein and adjacent thereto; $15,000 on lumber yard
known as No. 1; and $25,000 on yard No. 2. Appellant
United States Fire Insurance Company carried $5,000
of this general form insurance; appellant the American
Insurance Company carried $5,000 of it; appellant
Boston Insurance Company carried $2,500 of it; and ap-
pellant Security Insurance Company carried $2,500 of it.
On September 3 or 4, 1925, all of the lumber on yard No.
2 burned. Appellees A. B. Smith and others thereafter
succeeded to the rights of Bondurant Lumber Company
under the insurance policies above named. The insurers
under those policies denied liability, and actions were in-
stituted in the McCracken circuit court to recover the
amount due under them. The several actions were con-
solidated and heard and tried together. After the intro-
duction of the evidence on the issue hereinafter sug-
gested, which was made by proper pleadings, the trial
court peremptorily instructed the jury to find for plain-
tiff's below, and judgment was entered against the in-
surance companies named pursuant to the verdict re-
turned by the jury under that instruction. The insur-
ance companies have appealed.

It is insisted for appellant insurance companies that
in June, 1925, at the instance of Bondurant Lumber
Company, the insurance written for insured through

Boone, Foreman & Lackey, then in force, which amounted to $57,000, was rewritten so as to cover the following general schedule of property:

"1.  $25,000  On sawmill, engine room, and sorting shed buildings, including log haul, timber dock, and on machinery, engines, and lumber therein and / or thereon.

"2.  1,000  On sawmill boiler house building, including small boiler feed tank adjacent, and on boilers, machinery, and equipment therein and / or thereon.

"3.  200  On blacksmith shop and oilhouse buildings located approximately 30 feet southeast of sawmill building, and on machinery, equipment, supplies, tanks, containers, oils, and lubricating compounds therein.

"4.  300  On frame office building and dwelling located approximately 70 feet northwest of sawmill building, and on fixtures and supplies therein.

"5.  6,000  On store building located approximately 75 feet northwest of C., M. & G. R. R. Station, and on furniture, fixtures, supplies and stock therein.

"6.  24,500  On casket factory building, and on machinery, stock and equipment therein.

$57,000  Total."

It is insisted that by virtue of this revision of the insurance contracts the lumber on yards Nos. 1 and 2 which formerly had been covered by the policies sued on herein was eliminated. Hence that they are not liable for its loss.

The record establishes that the effort to revise the insurance policies written by Boone, Foreman & Lackey for Bondurant Lumber Company was instigated by insured. Part of its insurance was being carried by the old-line companies written through Boone, Foreman &

Lackey, and part of it by mutual companies organized by the lumber industry. The revision of the insurance was undertaken to make the insurance carried by the old-line companies concur with that written by the mutual companies. The schedule last quoted was devised to bring about that result; and in addition to it a schedule was prepared covering the lumber of the Bondurant Lumber Company on yard No. 1 and yard No. 2. These two new schedules or forms were printed and were intended to be attached to the standard policy forms as riders.

About June 1, 1925, Bondurant Lumber Company sent a supply of these new forms, both the general schedule and the lumber schedule, to Boone, Foreman & Lackey, by a messenger, with direction that they be prepared and forwarded to Bondurant Lumber Company to be attached to and form a part of the various policies of insurance written by that agency covering insured's various properties. On June 5, 1925, Boone, Foreman & Lackey wrote to Bondurant Lumber Company this letter:

"Mr. Auber Smith gave us some new forms to attach to your policies, but did not have the amounts to be placed on the various items.

"As it is very necessary that we have this information before amending policies, we would thank you to let us have same promptly."

On June 13, 1925, Boone, Foreman & Lackey wrote Bondurant Lumber Company as follows:

"Under date of June 5th, Mr. Auber Smith gave us some new forms to attach to your policies, but failed to give us the amounts on the individual items. In view of the fact that you have attached these forms to some of your policies, it is apparent that in event of loss all of your policies would not be concurrent, and a great deal of confusion would exist in adjustment.

"May we therefore ask that you furnish us with the amounts for these individual items on these forms at the earliest possible date and oblige."

Responding to those two letters, Bondurant Lumber Company on June 19th wrote to Boone, Foreman & Lackey as follows:

"In compliance with your recent request to furnish amounts of various items under general form

as drawn up by Lumbermen's Underwriters Alliance, and which we are now using in our policies, we take the pleasure of attaching a copy showing these amounts.

"You will note that the lumber coverage that was formerly in the old form has been removed from this new form, so we are sending a supply of lumber forms.

"You will also note that the new general form has been increased by a total of $1,700, this being distributed as follows: $1,000 on boiler house; $200 on shop; and $500 increase on store.

"We urge that on receipt of these forms you will adjust your present coverage to comply with these changes. If you desire the policies we have of yours in our vault here, we will be glad to forward them to you in order to get these items straightened out. With the use of these new forms on all our policies, our insurance will be concurrent.

"Kindly advise us if you wish us to send the policies we have of yours to Paducah."

The general form which was inclosed with this letter scheduled the property covered and fixed the amount of insurance on the various items of the schedule to a total of $57,000, and eliminated the lumber from yards 1 and 2 and substituted $24,500 on the casket factory. This schedule is the one quoted second herein. The lumber forms which were inclosed with this letter were not filled in at all. On August 15, 1925, Bondurant Lumber Company wrote to Boone, Foreman & Lackey advising that the new forms had never been received. On August 18th the latter responded that these forms had been mailed out on June 24th, and offered to forward duplicates if originals had not been received. On September 3d Bondurant Lumber Company wrote to Boone, Foreman & Lackey that the forms had never been received, and requested that duplicates be forwarded. The fire which destroyed the lumber on yard No. 2 occurred that day, and it was on the 7th of September that Bondurant Lumber Company received for the first time the new forms to be attached to the policies sued on herein carrying into effect Boone, Foreman & Lackey's understanding of the revision of insurance which insured sought to effect by the correspondence above quoted. Insured immediately notified insurers that the forms forwarded were not in accordance with what they intended.

The correspondence quoted above is about the only evidence to be found in the record on this controversy. At the time the movement was inaugurated which had for its purpose the revision of the insurance contracts, the Bondurant Lumber Company had in force insurance written through Boone, Foreman & Lackey to the aggregate amount of $39,000 under the general schedule first quoted herein, the policies to this aggregate amount insuring their proportionate part of that schedule of property which aggregated in value $70,800; and it also had in force insurance to the amount of $13,000 on the casket factory and machinery and stock and equipment therein, and insurance to the amount of $5,000 on lumber on yard No. 1, which also had been written through Boone, Foreman & Lackey. The policies insuring the casket factory and lumber were specific policies.

The argument for appellants is that their agent, Boone, Foreman & Lackey, had written exactly $57,000 of the insurance then being carried by Bondurant Lumber Company. By the letter of June 19th insured directed Boone, Foreman & Lackey to revise the contracts written by them so that instead of covering the risks as formerly written they would cover the items of property in the amounts set forth embraced in the schedule to the total amount of $57,000 which was inclosed. Their agent, Boone, Foreman & Lackey, acting for them, accepted the proposition, executed the new forms that have been prepared and forwarded in insured's letter of the 19th of June, and returned them on June 24th to insured to attach to the various policies involved. Appellants insist that these facts are to be found in the record, and that they establish conclusively that before the fire occurred the insurance on the lumber in yard No. 2 had been eliminated, and hence that they are not responsible for its loss. This argument falls in ruin if any of the foundation upon which it is builded proves to be unstable. Boone, Foreman & Lackey had written $57,000 of the insurance being carried for insured, $39,000 on the original general schedule, $13,000 specifically on the casket factory and contents, and $5,000 specifically on the lumber on yard No. 1. Mr. Lackey, the member of Boone, Foreman & Lackey who handled this insurance transaction, and the only witness for appellants who testified herein on the question, stated that he rewrote the $5,000 of insurance, originally written to cover the lumber on yard No. 1 specifically, on the new lumber

form submitted by insured. He does not testify that he rewrote the insurance to the amount of $13,000 originally written to cover the casket factory and contents specifically, on the new schedule general form. Hence the record does not disclose that $57,000 of insurance written through Boone, Foreman & Lackey was rewritten to cover the schedule of property to that total amount last quoted herein, because it does not disclose that the $13,000 covering the casket factory was so rewritten, and it discloses that the $5,000 on yard No. 2 was not so rewritten. Hence the entire argument for appellants, based upon this foundation, falls in ruins.

It is to be observed that insured said to Boone, Foreman & Lackey in the letter of June 19th:

"You will note that the lumber coverage that was formerly in the old form has been removed from this new form so we are sending a supply of lumber forms."

That seems clearly to have voiced its intention that in the revision of the insurance contracts insurers were still to protect it from fire damage and loss to the lumber on yards 1 and 2. That statement from that letter is wholly at variance with the contention for appellants that when insured sought to have its insurance contracts revised it intended to eliminate insurance on the lumber on yards Nos. 1 and 2. Why send lumber forms if it was not intended that the insurance as rewritten should cover the lumber to the same extent as originally? Including the casket factory and contents at $24,500 in the new schedule did not have the effect of increasing the insurance written by Boone, Foreman & Lackey. The $39,000 of insurance under the original general form written by Boone, Foreman & Lackey was 65/118 of $70,800, the total amount for which the property going to make up this general schedule was insured, while the $13,000 of insurance which Boone, Foreman & Lackey had written covering the casket factory and contents specifically was 65/120 of the $24,500 of insurance covering the casket factory. It must not be overlooked that the letters written to Boone, Foreman & Lackey by insured were with reference to all of the insurance written by them, and not particularly with reference to the policies sued on herein.

This court's careful consideration of the record leads to the conclusion that insured had insurance in force at the time the movement toward revision of its in-

surance contracts was inaugurated to the total amount of $107,000, $57,000 of which covered the items embraced in the schedule quoted last herein to the amounts respectively specified, and $50,000 of which covered lumber on yards Nos. 1 and 2. Insured intended to have its insurance contracts revised so that each policy would cover its pro rata part of the total amount of insurance on each and all of the various kinds of property insured. Whether that be true or not, it is conclusively established by the evidence found in the record that the minds of the parties never met on the attempted revision of the insurance contracts, and that, therefore, the contracts as originally written were still in force, and that the trial court properly so concluded. Therefore it was proper to direct the jury to return a verdict in accordance with the prayer of the petition. Consequently the judgment as to each of the appellants will be affirmed.

Judgment affirmed.